UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MILDRED WEAVER, individually and on behalf of all others similarly situated, | ) ) ) ) | Civil Action No. 4:07-3607-TLW-TER |
| Plaintiff, | ) ) ) | |
| -vs- | ) ) | **REPORT AND RECOMMENDATION** |
| ADVANCE AMERICA, CASH ADVANCE CENTERS OF SOUTH CAROLINA, INC., CHECK INTO CASH OF SOUTH CAROLINA, INC., and LOCAL CASH ADVANCE OF SC, LLC., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## I.    INTRODUCTION

This matter is before the court on Plaintiff's Motion to Remand (Document # 17) filed November 20, 2007.  Defendant Advance America Cash Advance Centers of South Carolina, Inc. (Advance America), filed its Response (Document # 37) in opposition on December 10, 2007.  A hearing was held on June 5, 2008, at which Plaintiff's counsel and counsel for all Defendants were present.

Also before the Court are Defendant Advance America, Cash Advance Centers of South Carolina, Inc.'s ("Advance America") Motion to Dismiss or Stay in Favor of Arbitration (Document # 6), Defendant Check Into Cash of South Carolina, Inc.'s ("Check Into Cash") Motion to Stay Proceedings and Compel Arbitration (Document # 13), and Defendant Local Cash Advance of SC, LLC's ("Local Cash Advance") Motion to Dismiss or Stay Pending Mandatory Arbitration (Document # 18).  These Defendants argue that Plaintiff's claims should be submitted to arbitration

based on binding arbitration provisions in the contracts. In her Response in Opposition (Document # 27) to each of the motions, Plaintiff argues that the arbitration provisions contained in the contracts are not enforceable.

The remand motion and the arbitration motions will be discussed in turn.

## II.    MOTION TO REMAND

### A.    Factual and Procedural History

This is a proposed class action filed by the Plaintiff alleging claims under the South Carolina Deferred Presentment Services Act, S.C. Code §§ 34-39-110, et seq.; the South Carolina Consumer Protection Code, as well as other South Carolina law claims. The crux of Plaintiff's claims allege that defendants entered into loan agreements, including deferred presentment provisions, with Plaintiff and others similarly situated without conducting an investigation into the Plaintiff's ability to repay the loan and knew or should have known Plaintiff would be unable to repay the loans likely resulting in additional loans to Plaintiff, including associated interest and fees. The case was originally filed in the Darlington County Court of Common Pleas and Defendant Advance America removed the case to this court.

Defendant removed this action to this court under the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code). Plaintiff timely filed her motion to remand.

### B.    Discussion

#### 1.    Minimal Diversity

CAFA vests jurisdiction in United States District Court when (1) there are 100 or more members of the alleged class; (2) minimal diversity exists among the parties; and (3) the claims of

the putative class members exceed five million dollars.  28 U.S.C. §1453.  Plaintiff challenges only the second prong - minimal diversity.

The party seeking removal carries the burden of establishing jurisdiction.  Mulcahey v. Columbia Organic Chemicals, Inc., 29 F.3d 148, 151 (4th Cir. 1994).  When jurisdiction is in doubt, remand is appropriate.  Id.  This is consistent with the clearly established law that United States courts are courts of limited jurisdiction.  Lehigh Mining & Manufacturing. Co. v. Kelly, 160 U.S. 337, 327 (1895).  CAFA did not shift the burden of establishing jurisdiction from the removing party.  Lowery v. Alabama Power Co., 483 F.3d 1184(11th Cir. 2007); Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994 (9th Cir. 2007);  Frederico v. Home Depot, 507 F.3d 188 (3rd Cir. 2007);  Blockbuster, Inc. v. Galeno, 472 F.3d 53 (2nd Cir. 2006); Morgan v. Gay, 471 F.3d 469 (3rd Cir. 2006); Smith v. Nationwide Property & Casualty Ins. Co., 505 F.3d 401, 404-05 (6th Cir. 2007); Miedema v. Maytag Corp., 450 F.3d 1322 (11th Cir. 2006); Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 455 F.Supp.2d 1323.

In order to establish "minimal diversity" Defendant must establish that "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. §1332(d)(2)(A).[1] There is no dispute that Advance America is incorporated in Delaware and has its principal place of business in Spartanburg, South Carolina.  Therefore, it is a citizen of both Delaware and South Carolina.  See 28 U.S.C. §1332(c)(1).  Also, there is no dispute that Defendants Local Cash Advance and Check Into Cash are citizens of South Carolina.

---

[1] Cf. 28 U.S.C. §1332(a)(1)(diversity jurisdiction exists in an action between "citizens of different States").  §1331(a)(1) requires complete diversity - no plaintiff and no defendant may be citizens of the same State.  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381 (1998); Athena Auto, Inc. v. DiGregorio, 166 F.3d 288 (4th Cir. 1999).

The one named Plaintiff is a citizen of South Carolina.[2][3]  The complaint defines the putative

class as follows: "all South Carolina residents who have entered into a Deferred Presentment Loan

or 'payday loan' as defined in South Carolina Deferred Presentment Services Act in South Carolina

with Defendants."[4]

In his affidavit filed with Defendant's opposition memorandum, Jonathan Mark Monson,[5]

corporate counsel for Advance America, the named Defendant's parent corporation,[6] avers the class

definition includes customers who entered into Deferred Presentment Services Agreements while

they were citizens of other states, and particularly transient residents passing through South Carolina

who had a short-term need for cash and availed themselves of Advance America's services.  He also

avers that the class definition includes customers who entered into Deferred Presentment Services

Agreements while they were residents of South Carolina but who moved to other states and

established domicile outside South Carolina.[7]

---

[2]  A class has not been certified in this action.  However, CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action."  28 U.S.C. § 1332(d)(8).  See also 28 U.S.C. § 1332(d)(1)(D) ("the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action").

[3]  Plaintiff's Complaint at ¶ 1.

[4]  Plaintiff's Complaint at ¶ 7.

[5]  There is no challenge to Mr. Monson's competency to testify on behalf of the named defendant.

[6]  Monson Decl. ¶ 2

[7]  This affidavit is dated December 10, 2007, and filed as exhibit A to Defendant's opposition memorandum to Plaintiffs' motion to remand.  It is different from the affidavit dated November 1, 2007, filed with defendant's Notice of Removal.

Mere allegations and bald assertions are insufficient to establish jurisdiction[8], especially when that jurisdiction is challenged. See Roche v. Lincoln Property Co., 373 F.3d 610, 616-17 (4th Cir. 2004), rev'd on other grounds, 546 U.S. 81 (2005); See generally Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192 (4th Cir. 2008); See e.g. Penteco Corp Ltd. Patnership 1985A v. Union Gas Sys., Inc. 929 F.2d 1519, 1521-22 (10th Cir. 1991). Defendant carries the burden of establishing jurisdiction by the preponderance of the evidence. See 2A Moore's Fed. Prac. ¶ 12.07[2-2]; 32 A Am. Jur. 2d Federal Courts § 861. Defendant's presentation does not identify any particular person or any particular State of which such person is a citizen, and it leaves it to the court to speculate as to the substance of his averments. Mr. Monson's Affidavit simply provides conclusory statements of this mixed question of law and fact, and is insufficient to convey subject matter jurisdiction in this court.[9]

Attached to Mr. Monson's affidavit are copies of Deferred Presentment Services Agreements entered in 2007 with nineteen customers as well as a single collection notice sent to each customer approximately two months after the Agreements were entered.

In each Agreement, the customer's address is listed in South Carolina. However, the collection notices that follow approximately two months later designate mailing addresses for the customers in different states and one in St. Thomas, Virgin Islands. The only other pertinent information contained in the Agreements is the identification of the financial institution from which the check was drawn and the number of the check presented for deferred deposit.

---

[8] Ellenberg, 519 F.3d at 199-200 (citing Bell Atlantic Corp. v. Twombly, – U.S. –, 127 S.Ct. 1955, 1964-65 (2007).

[9] At the hearing held June 5, 2008, Defendant estimated the number of potential class members as being in the tens of thousands. However, not one has been identified.

As noted above, Mr. Monson's affidavit standing alone is insufficient to establish the citizenship of these potential class members because the affidavit contains mere bald and conclusory assertions of this mixed question of law and fact. The documents presented tend to weaken the affidavit of Mr. Monson. To determine citizenship, or change of citizenship, of the customers based on the documents presented requires a leap in logic that amounts to pure speculation. There is no indication of the source of the new address or any other information showing citizenship or change of citizenship, or, in fact, even showing residency, or change in residency. It simply indicates that Defendant mailed a notice to a different address. Assuming Mr. Monson relies on these documents to render his opinion of the citizenship of these potential class members, his opinion is based on speculation.

It is Defendant's burden of proving jurisdiction is proper upon removal. See 28 U.S.C. § 1446 (notice signed pursuant to Rule 11, Fed.R.Civ.P). Plaintiff has challenged Defendant's claim of minimal diversity and Defendant fails to make a sufficient showing as to the citizenship of a proposed Plaintiff that would support minimal diversity. Thus, Defendant fails to meet its burden that jurisdiction is proper.

However, Defendant also argues that, even if all of the members of the proposed class are citizens of South Carolina, minimal diversity still exists because it is a citizen of both South Carolina and Delaware and its Delaware citizenship creates minimal diversity.

In the Notice of Removal (Document # 1), Defendant asserts that its citizenship in Delaware establishes minimal diversity. Defendant cites Fuller v. Home Depot Services, LLC, C.A. No. 1:07-cv-1268-RLV, 2007 WL 2345257 (N.D.Ga. August 14, 2007) in support of its argument. Home Depot, the defendant in Fuller, was incorporated in Delaware and had its principal place of business

-6-

in Georgia and the proposed class members were all citizens of Georgia.  Fuller, 2007 WL 2345257

at *3.  With no explanation or analysis as to how it reached its conclusion, the District Court for the

Northern District of Georgia found that minimal diversity existed:

> The plaintiff's argument is that there is no diversity because all of the class members and Home Depot are citizens of Georgia. However, that does not complete the citizenship analysis. Home Depot is also a citizen of Delaware because that is its state of incorporation. 28 U.S.C. § 1332(c)(1). Consequently, even assuming that the plaintiff and all potential class members are citizens of only Georgia, the minimal diversity requirement is met here because Home Depot is a citizen of a different state-Delaware. In other words, although Home Depot is a Citizen of Geogia, it is also a citizen of Delaware and, therefore, is diverse from at least one member of the class. Thus, minimal diversity has been established.

Id.  Defendant notes that CAFA creates expanded federal jurisdiction for class actions with only

narrow exceptions.  See Evans v. Walters Indus. Inc., 449 F.3d 1159, 1164 (11th Cir. 2006)).  In

Chavis v. Fidelity Warranty Services, Inc., 415 F.Supp.2d 620, 625 (D.S.C. 2006), the court noted

that CAFA "'is intended to expand substantially federal court jurisdiction over class actions.'"  Id.

(citing S.Rep. No. 109-14 at 42 (2005)).

Defendant also points to dicta in the United States Supreme Court case, Grupo Dataflux v.

Atlas Global Group, L.P., 541 U.S. 567, 578 n.6 (2004), in which the Court acknowledged that the

position asserted by Defendant regarding minimal diversity is possible:

> We understand "minimal diversity" to mean the existence of at least one party who is diverse in citizenship from one party on the other side of the case, even though the extraconstitutional "complete diversity" required by our cases is lacking. It is possible, though far from clear, that one can have opposing parties in a two-party case who are co-citizens, and yet have minimal Article III jurisdiction because of the multiple citizenship of one of the parties.

Id.

Plaintiff argues that the issue of minimal diversity should be resolved as contemplated by the District Court for the Western District of Missouri in <u>Sundy v. Renewable Env. Solutions, LLC</u>, 2007 WL 2994348 (W.D. Mo. Oct. 10, 2007). There, the court noted that the defendants, who maintained dual citizenship in Missouri and Delaware, had "failed to sustain their burden of demonstrating there is a member of the class who is neither a citizen of Missouri nor a citizen of Delaware, and have therefore failed to demonstrate federal jurisdiction exists." <u>Sundy</u>, 2007 WL 2994348 at *3. The court declined to adopt as a "correct statement of the law" the same argument raised by Defendant in the present case. <u>Id.</u> at *3 n.4.

Judge Duffy recently addressed the issue in at least two cases and concluded that dual citizenship of a defendant does not create minimal diversity under CAFA. In <u>Johnson , et al v. Advance America, Cash Advance Centers of South Carolina, Inc., et al</u>, C/A No. 2:07-cv-3447-PMD (D.S.C. April 25, 2008), Judge Duffy explained,

> While there is no doubt that Congress intended to expand federal jurisdiction over class action lawsuits by enacting the CAFA, and the court fully understands that minimal diversity is a separate and distinct concept from complete diversity, there is nothing in either the plain language of the statute or the legislative history that indicate that the statute goes as far as Defendant proposes. If the court were to accept Defendant's interpretation of the statute, this would only allow most large corporate entities, which are typically incorporated under the laws of Delaware but maintain principal places of business in other jurisdictions, to be sued in class action suits brought in federal court. This would be true even if the actions alleged only took place within a certain state (in this case, South Carolina), all plaintiffs and class members were citizens of that state, and there was no significant public policy reason why the case should be considered by a federal, and not a state, court.
>
> However, there is simply no evidence that Congress intended the CAFA to completely rewrite the most basic concepts in federal jurisdiction jurisprudence by enacting the CAFA and completely prevent corporate defendants from being sued in a class action in state court. Indeed, it would seem supremely ironic if a statute with the ostensible goal of preventing "forum shopping" allowed corporate defendants to completely deny plaintiffs access to state court class action remedies merely by

incorporating under Delaware law. Therefore, the court defines minimal diversity under the CAFA as being present when a defendant is not be [sic] a citizen of the same jurisdiction as the jurisdiction in which any member of the class is a citizen. Specifically, in this case, since Defendant is a citizen of South Carolina, and all plaintiffs are also citizens of South Carolina, the court does not find that the parties are diverse merely because Defendant incorporated under the laws of Delaware.

Id. at 8-9.  See also Dennison v. Carolina Payday Loans, Inc., C/A No. 2:07-cv-4016-PMD (D.S.C. May 21, 2008).

The undersigned finds Judge Duffy's analysis more persuasive.  Section 1332(c)(1) provides, in part, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  Section 1332(c)(1) "gives dual, not alternative, citizenship to a corporation whose principle place of business is located in a state different from the state of its corporation."  1 Fed. Proc., L.Ed. § 1:114 (citing Bank of California Nat. Ass'n v. Twin Harbors Lumber Co., 465 F.2d 489 (9th Cir. 1972); Hercules Inc. v. Dynamic Export Corp., 71 F.R.D. 101 (S.D. N.Y. 1976); Salomon Englander Y CIA, Ltda v. Israel Discount Bank, Ltd., 494 F. Supp. 914 (S.D. N.Y. 1980).  Defendant's approach is akin to alternative, not dual, citizenship because it essentially ignores Defendant's citizenship in South Carolina.[10]

Furthermore, while Congress's intent to expand federal jurisdiction over class actions cannot be ignored, see Chavis, 415 F.Supp.2d at 626 (citing S.Rep. No. 109-14 at 42 (2005), 2005 U.S.C.C.A.N. 3, 40) ("CAFA was passed with the clear intention of expanding "'federal court jurisdiction over class actions....'"), Defendant's attempt to utilize § 1332(c)(1) to further expand this court's jurisdiction is unsupported by the law.  This would be contrary to our limited scope of

---

[10]Importantly, Defendant does not attempt to establish or even allege that no members of the proposed class are citizens of Delaware, which, even assuming Defendant's analysis is correct, would destroy minimal diversity.

jurisdiction and our precedent of declining jurisdiction where its foundation is doubtful. Accordingly, there is no minimal diversity between the parties in this case, and it is recommended that Plaintiff's Motion to Remand (Document # 23) be granted and this case remanded to the Darlington County Court of Common Pleas.[11]

In the event the district judge does not follow this recommendation and finds that Defendant has met its burden of establishing jurisdiction, the remaining issues are discussed below.

### 2.     "Home State" and "Local Controversy" Provisions of CAFA

Assuming minimal diversity, jurisdiction is established.  However,  Plaintiff argues remand is appropriate and mandatory under the "home state" and "local controversy" provisions of CAFA. A party seeking to remand a case removed under CAFA, bears the burden of showing remand is proper.  Hart v. FedEx Ground Package System, Inc., 457 F.3d 675, 680 (7th Cir. 2006);  Preston v. Tenet Healthsystem Memorial Medical Center, Inc., 485 F.3d 804 (5th Cir. 2007);  Evans v. Walter Industries, Inc., 449 F.3d 1159 (11th Cir. 2006); Anthony v. Small Tube Mfg. Corp., 535 F.Supp.2d 506 (E.D. Pa. 2007); Caruso v. Allstate Ins. Co., 469 F.Supp.2d 364 (E.D. La. 2007); McMorris  v. TJX Companies, Inc., 493 F.Supp.2d 158 (D.Mass. 2007); Eakins v. Pella Corp., 455 F.Supp.2d 450, 452 (E.D.N.C. 2006).

Plaintiff asserts that the case must be remanded to state court because it falls under the remand provisions of 28 U.S.C. §1332(d)(4)(A) and (B).  §1332(d)(4)(B) provides that "[a] district

---

[11]As discussed above, Defendant argues minimal diversity exists based on the dual citizenship of Advance America.  As set forth above, courts addressing the issue have reached different conclusions.  Although the undersigned agrees with the opinions holding dual citizenship does not create minimal diversity, Defendant's position is not without reason and support.  For this reason, Plaintiff's request for fees and costs pursuant to 28 U.S.C. § 1447(c) should be denied.

court shall decline to exercise jurisdiction . . . [where] . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." ("Home State" exception). Plaintiff asserts that because the class definition is limited to South Carolina residents, they meet their burden of showing at least two-thirds of the proposed class members are citizens of South Carolina. The undersigned agrees with the defendants that a mere residency restriction alone is insufficient to establish citizenship for purposes of jurisdiction. See Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc., 145 F.3d 660, 663 (4th Cir. 1998). Citizenship requires residence and intent to remain. It is Plaintiff's burden to show citizenship of the purported class members and she has failed to do so.[12]

Plaintiff also seeks remand pursuant to §1332(d)(4)(A) which provides for remand if (1) greater than two-thirds of the members of the proposed classes are citizens of the State in which the action was originally filed; (2) at least one defendant is a defendant from whom significant relief is sought by members of the class, whose alleged conduct forms a significant basis for the claims asserted, and who is a citizen of the State in which the action was originally filed; and (3) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed. Additionally, §1332(d)(4)(A) requires during

---

[12] Assuming no valid arbitration agreement (discussed below) between the parties, discovery limited to "exceptions" to CAFA would be inappropriate. See e.g., Lowery v. Alabama Power Co., 483 F.3d 1184 (11th Cir. 2007). Thus, plaintiff's motion to hold in abeyance a ruling on the motion to remand should be denied. In other words, the removal jurisdiction is not dependent on the remand provisions of CAFA. Once minimal diversity, and the remaining provisions, are met this court has jurisdiction of the case. If this case remains in the court, plaintiff could file another motion if further discovery conducted during the court of the litigation reveals that remand is appropriate.

the three year period preceding the filing of the action, no other class action has been filed asserting the same or similar allegations against any of the defendants on behalf of the same or other persons.

Again, Plaintiff has failed to meet her burden of showing citizenship.  Thus, remand is not appropriate based on the "Home State" and "Local Controversy" exceptions to CAFA, and the court must address the Motions to Compel Arbitration filed by Defendants.

## III.     MOTIONS TO COMPEL ARBITRATION

### A.     Federal Arbitration Act, 9 U.S.C § 1, et seq.

The purpose of the Federal Arbitration Act (FAA)[13] "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991).   The FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). While Congress considered the advantage of expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered. Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468,478 (1989).

A party can compel arbitration if she establishes: " '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'

---

[13]  The parties agree that the FAA applies to this action.

-12-

" Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir.2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir.1991)). The FAA also provides for "stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration" and for "orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement." 9 U.S.C. §§ 3 & 4.

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26. The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" Mitsubishi, 473 U.S. at 625 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983). However, "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" Id. at 33 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., at al., 473 U.S. 614,627). Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In limited circumstances, a court should assume the parties intended the court to decide certain "gateway matters," such as whether a valid arbitration agreement exists, or whether the arbitration clause applies to a certain dispute. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452

(2003).[14]  There are two types of challenges to the validity of arbitration agreements.  One challenges

specifically the agreement to arbitrate and the other challenges the agreement (contract) as a whole.

Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006).  The former is an issue to be

addressed by the courts and the latter is to be addressed by an arbitrator.  Id. at 445-46.  In the present

case, Plaintiff challenges both the validity of the arbitration agreement as well and the validity of the

contract as a whole.  Nevertheless, our review does not encompass the validity of the entire

agreement but is limited to the substantive validity of the agreement to arbitrate.  Prima Paint Corp. v.

Flood & Conklin Mfg. Co., 388 U.S. 395 (1967).[15]

Plaintiff does not dispute that her claims fall within the scope of the arbitration provisions.

She challenges the validity of the provisions as unconscionable and against public policy.  Whether

_____

[14]  It should be noted that the agreements indicate the issue of arbitrability should be
decided in arbitration.  However, the parties have not raised this issue to the court.

[15] Arbitrability issues can be substantive or procedural.  Glass v. Kidder Peabody & Co.,
Inc., 114 F.3d 446 (4th Cir. 1997).  The distinction between "substantive arbitrability" and
"procedural arbitrability" determines the independent yet inter-related responsibilities of the
district court and the arbitrator under the Act.  Id. at 453.  "A substantive arbitrability inquiry
confines the district court to considering only those issues relating to the arbitrability of the issue
in dispute and the making and performance of the arbitration agreement."  Id. at 453.  In
conducting such an inquiry "the court engages in a limited review to ensure that the dispute is
arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific
dispute falls within the substantive scope of that agreement."  Id. (internal citation omitted).  The
court "then must refer the matter to arbitration without considering the merits of the dispute.  All
other issues raised before the court not relating to these determinations fall within the ambit of
'procedural arbitrability.'"  Id.
"[P]rocedural arbitrability inquiry includes but is not limited to, whether grievance
procedures or some part of them apply to a particular dispute, whether such procedures have been
followed or excused, or whether the unexcused failure to follow them avoids the duty to
arbitrate."  Id.  "[O]nce it is determined that the parties are obligated to submit the subject matter
of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its
final disposition should be left to the arbitrator."  Id. (citing John Wiley & Sons, Inc. v.
Livingston, 376 U.S. 543 (1964).

the agreements to arbitrate are unconscionable or against public policy are issues of substantive arbitrability, gateway issues. Thus, they present questions for the court instead of the arbitrator.

###### B.    Plaintiff's Claims of Unconscionability

Plaintiff challenges the arbitration provisions on the grounds that they are unconscionable and against public policy. Plaintiff asserts that the agreements are adhesion contracts because they are one-sided, standard form, take-it-or-leave-it contracts that deny Plaintiff any meaningful choice and that unreasonably favor Defendants. Thus, she argues, they should be approached with skepticism.

Plaintiff alleges that the arbitration clauses in the Deferred Presentment Services Agreements are unconscionable. Plaintiff asserts that Defendants, who are sophisticated businesses, force their contracts on borrowers in vulnerable situations during times of great financial need. She also claims that the arbitration agreements are grossly biased towards Defendants by allowing them to utilize judicial forums while denying same to Plaintiff. Thus, she argues the arbitration agreements are unconscionable.

Plaintiff asserts that the arbitration provisions are contrary to the public policy of South Carolina because they prevent Plaintiff, and all other borrowers, from acting as private attorneys general and seeking injunctive relief that will vindicate the public good.

She further argues that the prohibition on class actions violates public policy of South Carolina because, as a result of the small claims of each Plaintiff, Plaintiff, and others similarly situated, are effectively denied the ability to vindicate their rights. She argues that Rule 23, S.C.R.Civ.P., allow for class actions and sets forth policy to allow individuals to litigate jointly to pursue common remedies. Further, she argues that the South Carolina Consumer Protection Code

only prohibits class actions when civil penalties are sought, thus the legislature allows consumers to jointly enforce their rights under other circumstances.  <u>See</u> S.C. Code Ann. §37-5-108(b)(2). Thus, Plaintiff argues that barring class actions threatens a person's fair and adequate remedy to redress violations of their statutory rights.

### C.     The Arbitration Agreements

The arbitration provisions in the Deferred Presentment Services Agreements between Plaintiff and each respective Defendant are substantially similar.  The arbitration provisions in the Check Into Cash and Advance America agreements (CIC Agreement and AA Agreement, respectively) are particularly similar.  They both contain two pages with the signature line on the front page.  Above the signature lines they reference the applicability of the FAA and, in two places, clearly note the agreement contains a binding arbitration provision.  Just above the signature lines, the agreements set forth in bold that the customer acknowledges having, read, understood and agree to "the provision on the other side entitled 'Waiver of Jury Trial and Arbitration Agreement.'"

The majority of the second pages are used to set forth the arbitration provisions.  Again in bold, and in capital letters, they contain the heading "**WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT**."

Both agreements contain broad arbitration provisions to include any and all disputes between the parties, including claims brought by the customer individually, as a class representative, in a representative capacity, and as a private attorney general.  Both agreements contain the following language:

> (a) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;

(b) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;
(c) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

Both agreements explain the nature of arbitration. They both set forth the procedure for initiating arbitration and give the customer the right to choose among several reputable arbitration organizations and provide that the rules of procedure of the respective arbitration organizations will apply, provided the rules and procedure do not conflict with the arbitration agreement.

The agreements provide that the arbitrator shall not conduct class arbitration or allow a customer to serve as a class representative or as a private attorney general.

The agreements establish that Advance America/Check Into Cash will advance the customer's portion of the expenses associated with arbitration (including filing, administrative, hearing and arbitrator's fees), except that each party is responsible for their own attorneys' fees and expenses (including witness fees), and except that the CIC Agreement limits the advancement to that amount exceeding an amount equal to the court costs the customer would incur had they filed in court. They further provide that in the event the arbitrator renders a decision in favor of the customer, the customer has no responsibility for arbitration fees; however, if the arbitrator does not render a decision favorable to the customer, the customer is responsible for arbitration fees, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved in court.

Both agreements exclude claims adjudicated in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. They provide that any appeal from a small claims tribunal shall be resolved by binding arbitration.

The CIC Agreement contains a severability clause for invalid provisions.

The Local Cash Advance Agreement (LCA Agreement) also contains two pages (or one double-sided page) with the arbitration provision occupying most of the back page. The first page contains the signature lines. It does not reference the arbitration provision on the back but does contain language above the customer's signature line that the customer agrees "to all of the terms of this Agreement, including those on the other side." The arbitration provision in the LCA Agreement is almost identical to the AA Agreement, except it relieves a customer from reimbursing Local Cash Advance for any advancement of arbitration fees regardless of the outcome of arbitration.

### D.    Analysis

#### 1.    State Law

Generally, we look to state law principles to determine whether or not the parties entered into a valid arbitration agreement. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995). However, state law may not treat a provision for arbitration different than provisions in contracts generally. Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 281 (1995).

#### 2.    Public Policy

Plaintiff argues that the restriction on class actions and proceeding as a private attorney general renders the agreements invalid as against public policy both generally and in the context of consumer protection. Plaintiff presents no federal or South Carolina authority finding as per se invalid a prohibition on class actions or proceeding as a private attorney general, generally or

specifically in the context of consumer protection.[16]  Furthermore,  Plaintiff asserts this argument

generally, without any specific arguments or citations to authority regarding how the prohibition

violates public policy.  Also, her argument is presented in the abstract without any reference to its

applicability to this dispute between the parties.   Plaintiff argues only that the provision "purposely

attempts to frustrate civil rights laws, consumer protection laws, and all laws that allow an injured

party to bring actions seeking injunctive relief against illegal practices of Defendant that would

promote 'the broader interests of compliance with the law.'" Plaintiff's Mem. In Opp. at 7 (citing

Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401 (1968)).   However, the arbitration

agreement does not limit the remedies Plaintiff is allowed to seek, and the arbitrator can award

injunctive relief and any applicable statutory damages.  Requiring a litigant to seek a remedy through

arbitration does not affect the availability of the remedy itself.  Munoz, 343 S.C. at 542, 542 S.E.2d

at 365. Plaintiff's reliance on South Carolina Rule of Civil Procedure 23 lends little support to her

argument.  Rule 23 is a procedural rule that conveys no substantive right.  See, e.g., Diaz-Ramos v.

Hyundai Motor Co., 501 F.3d 12, 15-16 (1st Cir. 2007).   While class actions in particular

circumstances can contain substantive rights, Plaintiff fails to show any substantive rights applicable

to this case.  Moreover, substantive rights may be waived. See Lake James Community Volunteer

Fire Dept., Inc. v. Burke County, N.C., 149 F.3d 277 (4th Cir. 1998) (noting that "simply because a

---

[16]  Plaintiff cites as persuasive authority cases from other jurisdictions, including Eagle v.
Fred Martin Motor Co., 809 N.E.2d 1161 (Ohio App. 2004).  Plaintiff's reliance on this case is
misplaced.  The court found the agreement involving a "necessity" contained draconian terms
and was, therefore, unconscionable.  Also, it found the provision to be against public policy of
Ohio because it prohibited the consumer from proceeding in a class capacity or as a private
attorney general and because it contained a confidentiality provision.  Id. at 1180.  Additionally,
Eagle is not binding on this court.

contract includes the waiver of a constitutional right does not render the contract <u>per se</u> unenforceable" and listing waivers of rights that have been upheld, including the right to a jury trial).

Plaintiff fails to identify any specific source of public policy that would <u>per se</u> invalidate a contractual provision where a person agrees to waive a right to proceed as a class or as a private attorney general.  As quoted by the South Carolina Supreme Court,

> "'Public policy' is a term of vague and uncertain meaning, which it pertains to the lawmaking power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law. Sir George Jessel, as master of the rolls, said in Besant v. Wood, L. R. 12 Ch. Div. 605, that public policy is 'to a great extent a matter of individual opinion, because what one man or one judge might think against public policy another might think altogether excellent public policy.' And in another case (Printing etc. Co. v. Sampson, L. R. 19 Eq. 465) the same jurist said: 'If there is one thing which, more than another, public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice.'"

<u>Alderman v. Alderman</u>, 178 S.C. 9, 17, 181 S.E. 897, 904 (1935) (quoting <u>Smith v. San Francisco, etc., Ry. Co.</u>, 115 Cal. 584, 47 P. 582, 587, 35 L. R. A. 309, 56 Am. St. Rep. 119).  The court later said, "[a] sound public policy requires the enforcement of contracts deliberately made, which do not clearly contravene some positive law or rule of public morals.... Courts should not annul contracts on doubtful grounds of public policy. In such matters it is better that the legislature should first speak." <u>Rice v. Multimedia, Inc.</u>, 318 S.C. 95, 100, 456 S.E.2d 381, 384 (1995).

Plaintiff fails to present authority recognizing a clear public policy against agreements restricting class actions or private attorney general actions.  None of these agreements contain the provisions found in <u>Eagle</u> preventing disclosure to the public.  Plaintiff fails to show how those

restrictions will restrict the public from being informed of consumer protection issues or the conduct

of Defendants.  To the extent she argues that public policy disfavors an arbitral forum itself because

by its nature it diminishes the flow of information to the public, her position is without merit.

Snowden v. CheckPoint Check Cashing, 290 F.3d 631 (4th Cir. 2002) (finding arbitration agreement

enforceable in where the plaintiff had alleged violations of the Maryland Consumer Protection

Act).[17]

Plaintiff, therefore, fails to establish the invalidity of the arbitration provisions as against

public policy.  However, she also argues that, when applied to these particular circumstances, the

provisions are unconscionable.

### 3.    Unconscionability

Plaintiff also challenges the arbitration agreements' validity on grounds of unconscionability.

Plaintiff bears the burden of showing that the arbitration provisions in the agreements at issue are

unenforceable.  Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000).    Under South Carolina

law, unconscionability is defined as "the absence of meaningful choice on the part of one party due

to one-sided contract provisions, together with terms that are so oppressive that no reasonable person

would make them and no fair and honest person would accept them."  Carolina Care Plan, Inc. v.

United Health Care Servs., Inc., 606 S.E.2d 752, 757 (S.C. 2004).

Courts should look at several factors to determine whether there was an absence of

meaningful choice, including the nature of the injuries suffered by the plaintiff; the relative disparity

---

[17]Moreover, the CP and CIC Agreements contain severability clauses which would allow
an offensive provision to be severed.  The severability clauses may make the issues matters for
the arbitrator.  See Green Tree Financial Corp.v. Bazzle, 539 U.S. 444 (2003).  However, this
issue is not before the court.

in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the contract provision; and the conspicuousness of the clause.  Simpson v. MSA of Myrtle Beach, Inc., 373 S.C. 14, 25, 644 S.E.2d 663, 669 (S.C. 2007).   In the context of procedural arbitrability issues, the Fourth Circuit has described unconscionability as whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker.  Id. (citing Hooters of Amer., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999)).

First, Defendants do not deny that their contracts are adhesion contracts.  Adhesion contracts are standard form contracts offered on a take-it-or-leave-it basis with terms that are not negotiable. Simpson, 373 S.C. at 26-27, 644 S.E.2d at 669 (citing Munoz v. Green Tree Fin. Corp., 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001).  However, adhesion contracts are not per se unconscionable. Lackey v. Green Tree Fin. Corp., 330 S.C. 388, 395, 498 S.E.2d 898, 902 (Ct.App.1998).  As the South Carolina Supreme Court has noted, the standardization of contracts is "'a rational and economically efficient response to the rapidity of market transactions and the high costs of negotiations.'"   Id. (quoting Goodwin v. Ford Motor Credit Co., 970 F.Supp. 1007, 1015 (M.D.Ala.1997)).

Plaintiff alleges in her Complaint that she is not a substantial business concern and she lacks the necessary business judgment and sophistication needed to fully understand the implications of the arbitration provisions.  She further alleges that she did not have an attorney present to explain the agreements and she was not given adequate time to review and understand them.  She also asserts that Defendants' employees did not explain the agreements to him or affirmatively misled him as to their meanings.  Also, she claims that there was tremendous disparity between the parties' bargaining power.  Noticeably, however, except for the agreements themselves, Plaintiff fails to

present any evidence, by way of affidavit or otherwise, to support these allegations, and, as stated above, she bears the burden of establishing that the agreements at issue are unenforceable.

Even, assuming arguendo, Plaintiff's allegations are true, the "mere fact that one party to the contract is larger than the other" cannot be the basis of a finding of unconscionability of an arbitration clause in a contract. Stedor Enters., Ltd. v. Armtex, Inc., 947 F.2d 727, 733 (4th Cir. 1991). Likewise, "[i]nequality of bargaining power alone will not invalidate an arbitration agreement." Munoz, 343 S.C. at 541 n.5, 542 S.E.2d at 365 n.5 (citing Gilmer, 500 U.S. at 20). Furthermore, a party to a contract has a duty to read the contract and learn its contents before signing it. Burwell v. South Carolina Nat. Bank, 288 S.C. 34, 39, 340 S.E.2d 786, 789 (1986) (citing J.B. Colt Co. v. Britt, 129 S.C. 226, 123 S.E. 845 (1924)). As noted above, this court must determine whether the arbitration agreement "is geared towards achieving an unbiased decision by a neutral decision-maker." Simpson, 373 S.C. at 25, 644 S.E.2d at 669.

Plaintiff also alleges that the injuries suffered by him under the contract as a whole cannot be economically or feasibly compensated under the terms of the agreements. However, the provisions do not purport to restrict statutory penalties and injunctive or equitable relief as would be available in the courts, including attorneys' fees if recoverable under applicable law. In fact, the arbitration agreements do not limit in any way the remedies available to Plaintiff. Furthermore, the cost of arbitration under the agreements does not hinder Plaintiff's ability to pursue her claims. "Where a party 'seeks to invalidate an arbitration agreement on the ground that the arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'" Adkins v. Labor Ready, Inc., 303 F.3d 496, 502 (citing Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000)). Plaintiff has not satisfied that burden. Plaintiff provides

-23-

insufficient evidence that she would suffer economic hardship under the terms of the arbitration agreements, or that she would be deprived of her "day in court."

Plaintiff's claim that the agreements are grossly biased towards Defendants is also without merit. Plaintiff asserts that the agreements "allow Defendants to utilize the judicial system to redress their claims against Plaintiff, while effectively denying Plaintiff the ability to do likewise." Plaintiff's Mem. In Opp. at 15. Plaintiff claims that the provision allowing claims to be brought in Magistrate's Courts favors Defendants because, since Defendants' loans are always less than the jurisdictional maximum for Magistrate's Courts, Defendants can bring collection actions against borrowers in such a court, but the borrowers are forced into arbitration since the claims they would likely bring would be outside the jurisdiction of the Magistrate's Court. This argument is contrary to Plaintiff's argument, discussed below, that borrowers cannot successfully assert their claims without the class action vehicle because their claims tend to be small.[18] Convenience is not the standard for unconscionablility. See In re Cotton Yarn Antitrust Litigation, 505 F.3d 274, 285 (4th Cir. 2007). The standard is whether the terms are so one-sided and oppressive as to invalidate the agreement entered into and excuse Plaintiff's duty to honor the agreement.

Additionally, contrary to Plaintiff's assertion, there is no element of surprise with regard to the arbitration provisions because they are conspicuous and explanatory.

The prohibition on class actions contained in the arbitration agreements also is not unconscionable. Plaintiff asserts that "there are no realistic alternatives to a class action for vindicating the Plaintiff's rights and the public policy of South Carolina, especially in cases where

---

[18]Either Plaintiff substitutes the value of a class action claim for her claim for this argument, or it is patently inconsistent with her argument below.

small sums are involved, or cases primarily concerned with injunctive relief." Plaintiff's Mem. In

Opp. at 13-14. This argument has been rejected by the Fourth Circuit. In <u>Snowden v. CheckPoint</u>

<u>Check Cashing</u>, 290 F.3d 631 (4th Cir. 2002), the court rejected the plaintiff's argument that "the

Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle,

she will be unable to maintain her legal representation given the small amount of her individual

damages." <u>Id.</u> at 638. The court concluded that the argument was unfounded because the act under

which Plaintiff sought relief provided for attorneys' fees. <u>Id.</u> Likewise, in the present case, Plaintiff

asserts a cause of action pursuant to the Consumer Protection Code, which provides for attorney's

fees. <u>See</u> S.C. Code Ann. § 37-5-202(8). Furthermore, the arbitration agreement provides for the

advancement of the costs of arbitration upon request by Plaintiff and that Plaintiff need not return

those funds if she is successful in her claim. Plaintiff's "inability to bring a class action . . . cannot

by itself suffice to defeat the strong congressional preference for an arbitral forum." <u>Adkins</u>, 303

F.3d at 503.

    This court cannot conclude that Plaintiff did not have a meaningful choice when entering the

arbitration agreements or that the arbitration agreements are "geared towards achieving an unbiased

decision by a neutral decision-maker." <u>Simpson</u>, 373 S.C. at 25, 644 S.E.2d at 669.<sup>19</sup> Applying the

---

<sup>19</sup>Plaintiff relies heavily on the South Carolina Supreme Court case <u>Simpson v. MSA of</u>
<u>Myrtle Beach, Inc.</u>, 373 S.C. 14, 25, 644 S.E.2d 663, 669 (S.C. 2007), in which the court found
the arbitration agreement signed by the plaintiff to be unenforceable. However, the agreements
at issue here are significantly different from the agreement at issue in <u>Simpson</u>. In applying a
case-by-case analysis, the court found the plaintiff had no meaningful choice, in part because the
agreement involved an automobile, which was "critically important"; the plaintiff lacked
business judgment and had no attorney present; the agreement was "hastily" presented for her
signature; and the arbitration provision required the plaintiff to forgo certain statutory remedies.
<u>Id.</u> at 27, 644 S.E.2d at 670. The court also found the contract to be one-sided and oppressive
because it limited plaintiffs' statutory remedies which defeated the purpose of the statute. <u>Id.</u>
Additionally, the court found a lack of mutuality of remedy because the defendant had the right

case-by-case analysis as directed in <u>Simpson</u>, Plaintiff has failed to present sufficient evidence to

support her arguments that the arbitration agreements are unconscionable.  Because Plaintiff has

failed to meet her burden of establishing otherwise, the arbitration agreements at issue in this case

are valid and enforceable.  Accordingly, if the district judge finds jurisdiction is appropriate in this

court, this matter should proceed to arbitration.

   **4.**  **Relief**

   Advance America and Local Cash Advance ask that this action be dismissed, or, in the

alternative, that it be stayed pending resolution of the arbitration.  Check Into Cash asks only that

the case be stayed.  Either solution is appropriate under the FAA.  <u>See</u> <u>Choice Hotels Intern., Inc. v.</u>

<u>BSR Tropicana Resort, Inc.</u>, 252 F.3d 707, 709-10 (4th Cir. 2001) (citing <u>Alford v. Dean Witter</u>

<u>Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir.1992)).  "Dismissal is a proper remedy when all of the

issues presented in a lawsuit are arbitrable."  <u>Id.</u>  Plaintiff does not argue that any of her claims fall

outside the arbitration agreements, only that the arbitration agreements are invalid.  Thus, because

the court has found the agreements to be valid, all the claims raised by Plaintiff are arbitrable.

---

to proceed in court for "claim and delivery repossession, injunctive relief or money owed in
connection with the purchase or lease of any vehicle and claims by the defendant car dealer . . . ."
<u>Id.</u> at 31, 644 S.E.2d at 672.  The court found the agreement to be one-sided and not to promote a
neutral and unbiased arbitral forum.  <u>Id.</u> at 32, 644 S.E.2d at 672.  Further, the court found that
actions under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 <u>et seq.</u> are not subject to
arbitration.  <u>Id.</u> at 32, 644 S.E.2d at 673.  For all of these reasons, the court found the arbitration
provision to be unenforceable, and that the offensive provisions could not be severed because it
would leave a disintegrated fragment of the agreement.  <u>Id.</u> at 34-35, 644 S.E.2d at 674.
Importantly, the court noted "that there is no specific set of factual circumstances establishing the
line which must be crossed when evaluating an arbitration clause for unconscionability. . . .
Instead, we emphasize the importance of a case-by-case analysis in order to address the unique
circumstances inherent in the various types of consumer transactions."  <u>Id.</u> at 36, 644 S.E.2d at
674.

Accordingly, if the district judge finds that jurisdiction rests in this court, the parties should be ordered to proceed to arbitration and this action should be dismissed.

## III.    CONCLUSION

In light of the above analysis, Plaintiff's Motion to Remand (Document # 17) should be granted and the case be remanded to the Darlington County Court of Common Pleas for lack of jurisdiction under CAFA for lack of minimal diversity.  Alternatively, if the district judge finds minimal diversity, it is recommended that Plaintiff's Motion to Remand (Document # 17) under the "exceptions" to CAFA be denied and, based on the  arbitration agreements between the parties Advance America's Motion to Dismiss or Stay in Favor of Arbitration (Document # 6), Check Into Cash's Motion to Stay Proceedings and Compel Arbitration (Document # 13), and Local Cash Advance's Motion to Dismiss or Stay Pending Mandatory Arbitration (Document # 18) be granted, that Plaintiff's claims be submitted to arbitration in accordance with the agreements, and that this case be dismissed.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 16, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the following page.**